**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
JOEY A.                       :    Civ. No. 3:21CV00244(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION¹      :    March 23, 2022
                              :
------------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Joey A. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves to reverse the Commissioner's

---

[1] Plaintiff has named Andrew M. Saul, now the <u>former</u> Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. <u>See</u> Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

decision or, in the alternative, to remand for further administrative proceedings. See Doc. #20-2 at 20. Defendant moves for an order affirming the decision of the Commissioner. See Doc. #25.

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #20]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **GRANTED**.

I.   <u>**PROCEDURAL HISTORY**</u>[2]

Plaintiff filed concurrent applications for DIB and SSI on August 18, 2017, alleging disability beginning February 2, 2011. See Certified Transcript of the Administrative Record, Doc. #18, compiled on May 25, 2021, (hereinafter "Tr.") at 227-42.[3] Plaintiff's applications were denied initially on December 21, 2017, see Tr. 172-80, and upon reconsideration on January 10, 2019. See Tr. 187-91.

On January 8, 2020, plaintiff, represented by Attorney Alan L. Rosner, appeared and testified at a hearing before

_____

[2] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Facts, see Doc. #20-1, to which defendant filed a Responsive Statement of Facts. See Doc. #25-2.

[3] The Application Summaries reflect a date of September 6, 2017. See Tr. 227-42. However, the record confirms that plaintiff filed his applications on August 18, 2017. See Tr. 12, Tr. 82, Tr. 98. Accordingly, the Court uses August 18, 2017, as the application date.

Administrative Law Judge ("ALJ") Deirdre R. Horton. See generally Tr. 31-81. At the hearing, plaintiff amended his alleged onset date to January 1, 2016. See Tr. 38. Vocational Expert ("VE") James L. Soldner appeared and testified by telephone at the hearing. See Tr. 33-34, Tr. 71-80. On March 4, 2020, the ALJ issued an unfavorable decision. See Tr. 9-30. On January 7, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's March 4, 2020, decision the final decision of the Commissioner. See Tr. 1-6. This case is now ripe for review under 42 U.S.C. §405(g).

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is

always to ensure that a claim has been fairly evaluated[.]" Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether

substantial evidence exists to support that finding." <u>Leslie H. L. v. Comm'r of Soc. Sec. Admin.</u>, No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

## III. <u>**SSA LEGAL STANDARD**</u>

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. <u>See</u> 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c), §416.920(c) (requiring that an "impairment or combination of impairments ... significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine whether a person is disabled. See 20 C.F.R. §404.1520(a)(4), §416.920(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

> Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is "the most" a person is still capable of doing despite limitations resulting from her or his physical and mental impairments. 20 C.F.R. §404.1545(a)(1), 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

"[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and quotation marks omitted).

## IV.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff was not "under a disability within the meaning of the Social Security Act from January 1, 2016, the amended alleged onset date through" March 4, 2020.[4] Tr. 13.

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 1, 2016, the amended alleged onset date[.]" Tr. 15. At step two, the ALJ found that plaintiff had "the following severe impairments: Multiple Sclerosis (MS); and Degenerative Disc Disease of the Lumbar Spine and Cervical Spine[.]" Id. (sic).

---

[4] A claimant seeking DIB for a period of disability must, in addition to presenting evidence of his disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that he was disabled prior to the expiration of his insured status, i.e., as of his date last insured. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's date last insured was December 31, 2016. See Tr. 82. However, given that plaintiff concurrently filed an application for SSI, which does not include an "insured status" requirement, the ALJ properly acknowledged that the relevant time period under consideration is the amended alleged onset date of January 1, 2016, through March 4, 2020, the date of the ALJ's decision. See Tr. 24.

At step three, the ALJ determined that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. The ALJ specifically considered Listing "1.04 (Disorder of Back)[,]" and "Listing 11.09 (Multiple Sclerosis)." Id.

Before moving on to step four, the ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and walk four hours in an eight-hour workday with occasional ability to climb ramps and stairs but no climbing of ladders, ropes, or scaffolds and occasional balancing, stooping, kneeling, crouching and crawling. He must avoid unprotected heights or hazardous machinery and concentrated exposures to extreme heat.

Id.

At step four, the ALJ concluded that plaintiff was "capable of performing past relevant work as a Hotel Services Sales Representative." Tr. 21. The ALJ also made alternative step five findings, and concluded that "there are other jobs that exist in significant numbers in the national economy that [plaintiff] can also perform, considering [plaintiff's] age, education, work experience, and" RFC. Tr. 22.

**V.   <u>DISCUSSION</u>**

The Court construes plaintiff's motion as contending that: (1) the ALJ's evaluation of some of the medical opinions in the

record was not supported by substantial evidence, see Doc. #20-2 at 20; and (2) the RFC determination is not supported by substantial evidence, see id. at 2. Plaintiff recites numerous alleged errors in the ALJ's decision. However, plaintiff's argument fails in two over-arching respects. First, plaintiff continually fails to acknowledge that at this stage of review, the question before the Court is not whether there is evidence that could support plaintiff's position, but whether the ALJ's decision is supported by substantial evidence. See, e.g., Lodge v. Burwell, 227 F. Supp. 3d 198, 208 n.8 (D. Conn. 2016) ("If substantial evidence supports the Secretary's decision, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. The court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review." (citations and quotation marks omitted)). Second, plaintiff fails to tie the errors claimed to any defect in the RFC, and does not identify any specific additional limitation that should or would have been included in the RFC, if the ALJ had evaluated the evidence differently. Without such a link between the alleged errors and the RFC itself, the alleged errors would be harmless. See, e.g., Keovilay v. Berryhill, No. 3:19CV00735(RAR), 2020 WL 3989567, at *8 (D. Conn. July 15, 2020) ("[P]laintiff offers no evidence or explanation as to how

her obesity affected her BPD and therefore the ALJ's RFC determination. Thus, any potential error is harmless."); Irish v. Colvin, No. 5:14CV00668(MAD), 2015 WL 4393175, at *12 n.4 (N.D.N.Y. July 15, 2015) ("Plaintiff does not explain how these concerns would have affected the outcome of the ALJ's analysis, so this court considers any such oversight to be harmless error.").

As set forth below, the Court finds that the ALJ did not commit reversible error, and her decision is supported by substantial evidence.

A.   Evaluation of Medical Opinion Evidence

Plaintiff contends that the ALJ's evaluations of the opinions authored by Dr. Kenneth Fischer, plaintiff's treating neurologist, and MPT Jeanine Hrabosky, plaintiff's treating physical therapist, are not supported by substantial evidence. See Doc. #20-2 at 13, 17, 20. Plaintiff also asserts that the opinions of the reconsideration-level state agency medical consultants were stale, and that the ALJ erred in finding that "the additional evidence submitted at the hearing level does not support a greater or worsening condition." Doc. #20-2 at 7. Defendant contends that the ALJ properly considered the medical opinion evidence. See generally Doc. #25-1 at 18-21.

1.  *Applicable Law*

The SSA has enacted new regulations regarding the consideration of medical opinions for claims filed on or after March 27, 2017. See 20 C.F.R. §404.1520c, §416.920c. Because plaintiff filed his application on August 18, 2017, the new regulations apply to his claims.

"Previously, the SSA followed the treating physician rule, which required the agency to give controlling weight to a treating source's opinion, so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citation and quotation marks omitted). Under the new regulations, "no particular deference or special weight is given to the opinion of a treating physician." Quiles v. Saul, No. 19CV11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical opinions." Jacqueline L., 515 F. Supp. 3d at 8 (citation and quotation marks omitted); see also 20 C.F.R. §404.1520c(a),

§416.920c(a). For applications filed after March 27, 2017, the ALJ considers medical opinions using the factors outlined in 20 C.F.R. §404.1520c(c)(1)-(5), §416.920c(c)(1)-(5) "as appropriate[,]" with "[t]he most important factors" being "supportability ... and consistency[.]" 20 C.F.R. §404.1520c(a), §416.920c(a); see also id. at (b)(2) ("The factors of supportability ... and consistency ... are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions[.]"). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ..., the more persuasive the medical opinions ... will be." 20 C.F.R. §404.1520c(c)(1), §416.920c(c)(1). Additionally, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §404.1520c(c)(2), §416.920c(c)(2).

When "articulat[ing] [the] consideration of medical opinions" the ALJ "will articulate ... how persuasive [he or she] find[s] all of the medical opinions[.]" 20 C.F.R. §404.1520c(b), §416.920c(b). In doing so, the ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions ... in [the] ...

determination or decision." 20 C.F.R. §404.1520c(b)(2),
§416.920c(b)(2). The ALJ is "not required to[] explain[,]" id.,
how he or she evaluated the other factors of: the medical
source's relationship with the claimant; the medical source's
specialization; and "other factors that tend to support or
contradict a medical opinion[.]" 20 C.F.R. §404.1520c(c)(3)-(5),
§416.920c(c)(3)-(5); accord Jacqueline L., 515 F. Supp. 3d at 8.

The new regulations acknowledge that "[a] medical source
may have a better understanding of your impairment(s) if he or
she examines you than if the medical source only reviews
evidence in your folder." 20 C.F.R. §404.1520c(c)(3)(v),
§416.920c(c)(3)(v).

2.   *Opinion of Dr. Fischer*

The ALJ considered the medical opinions of plaintiff's
treating neurologist, Dr. Kenneth Fischer. See Tr. 20-21. Dr.
Fischer completed two Medical Source Statements on June 19,
2018, one specifically related to lumbar spine issues, see Tr.
1566-69, and the other specifically related to Multiple
Sclerosis issues, see Tr. 1571-74. He opined, inter alia, that
plaintiff: could "[s]tand/walk" for "about 2 hours" in an eight-
hour work day; could sit for "about 4 hours" in an eight-hour
work day; would need one-to-two extra breaks per day; and would
miss "[m]ore than four days per month" of work "as a result of
the impairments or treatment[.]" Tr. 1567-69; Tr. 1572-74.

14

The ALJ found "the assessed limitations" in Dr. Fischer's opinions to be "minimally persuasive, as they are inconsistent with the treatment notes and the claimant's significant activities." Tr. 20. Specifically, the ALJ found:

> The treatment notes from Dr. Fischer the same day that he completed the medical source statements (June 18, 2018) report that he had not seen the claimant since 2014 and that the claimant has rejected any intervention for the MS (Exhibit 29F/2). Dr. Fischer ordered updated testing and those MRI's showed no new symptoms of MS, despite active demyelination (Exhibit 29F/7) and only mild degenerative changes to his lumbar spine (Exhibit 29F/3-6).

Tr. 20-21 (sic).

Plaintiff asserts that the ALJ did not adequately consider that "Dr. Fischer ... was the neurologist who had assessed Plaintiff in 2010, 2011, 2013 and 2014." Doc. #20-2 at 13.[5] Under the new regulations, the ALJ was "not required to[] explain[,]" how she evaluated the medical source's relationship with the claimant. 20 C.F.R. §404.1520c(b)(2), §416.920c(b)(2). It is clear from the ALJ's decision, however, that she did consider plaintiff's relationship with Dr. Fischer. The ALJ explicitly cited Exhibit 29F eleven times in her ruling. See Tr. 19-21. Exhibit 29F is the summary of a June 13, 2018, neurological consultation by Dr. Fischer with plaintiff. See Tr. 1575-82.

---

[5] Plaintiff fails to acknowledge that all of these assessments occurred significantly prior to the amended onset date of January 1, 2016, rather than within the disability period.

This appears to be the only contact plaintiff had with Dr. Fischer in the four years preceding the issuance of the opinions.

The report begins with the statement: "Today I have seen for neurological consultation Mr. [plaintiff], a 44-year-old right-handed businessman originally from Connecticut. I have seen Mr. [plaintiff] between 2007 but not since 6-17-14." Tr. 1576. The ALJ noted that Dr. Fischer had not seen plaintiff since 2014. See Tr. 20. It is apparent that the ALJ adequately considered plaintiff's relationship with Dr. Fischer. See, e.g., Wayne M. v. Saul, No. 3:20CV00465(SALM), 2021 WL 1399777, at *11 (D. Conn. Apr. 14, 2021) ("[T]he Court can glean from the ALJ's decision that she considered the treatment relationship between plaintiff and these two providers."). There is no error in this regard.[6]

The ALJ properly evaluated the persuasiveness of Dr. Fischer's opinions. The ALJ considered supportability, finding that the assessed limitations were "inconsistent with" Dr. Fischer's "treatment notes[.]" Tr. 20; see also Palmer v. Saul,

---

[6] The top of the first page of this report features a letterhead describing Dr. Fischer as "Diplomate American Board of Neurology[;] Diplomate American Board of Quality Assurance Utilization Review[; and] Diplomate American Academy of Pain Management[.]" Tr. 1576 (capitalizations altered). Thus, the Court can also infer that Dr. Fischer's specialization was known to, and considered by, the ALJ.

No. 3:19CV00920(SALM), 2020 WL 4731350, at *5 (D. Conn. Aug. 14, 2020) ("The ALJ also considered the supportability of the [source's] opinion, engaging in an extensive discussion of [the source's] treatment notes throughout his decision[.]").[7] That finding is supported by the record. Dr. Fischer's report of his only recent consultation with plaintiff, which occurred a few days before the Medical Source Statements were signed, does not support the restrictions assessed. Dr. Fischer stated that plaintiff "is consistently rejected any intervention with his multiple sclerosis from immunomodulating medications despite extensive counseling." Tr. 1576 (sic). He further stated that plaintiff had recent complications relating to the lumbar spine, but that he "has had no new symptoms of MS" and was seeking "guidance as far as how to proceed with his case neurologically." Id. Upon examination, Dr. Fischer made many findings of normal function, and some of impaired function, but in summary concluded that plaintiff's MS "appears to be stable

---

[7] As noted, Dr. Fischer had seen plaintiff only once in four years at the time he issued the opinions in question. While Dr. Fischer did examine plaintiff on June 13, 2018, it does not appear that he had the benefit of any recent test results or other clinical findings when he issued the opinions. Furthermore, the only "objective medical evidence" cited by Dr. Fischer in support of the functional limitations recommended as to plaintiff's multiple sclerosis was: "Findings on exam, MRI[.]" Tr. 1571. He provided no meaningful "supporting explanations" at all for his opinion, which undermines the "[s]upportability[]" of the MS opinion. 20 C.F.R. §404.1520c(c)(1), §416.920c(c)(1).

at least clinically." Tr. 1577. Notably, the Hoffman's and straight leg raising tests were negative. See id.

The ALJ also considered the opinion's consistency with the record as a whole. The ALJ found Dr. Fischer's assessed limitations were minimally persuasive because they were inconsistent with "the claimant's significant activities." Tr. 20. Other aspects of the ALJ's decision reveal which activities the ALJ found significant. For instance, the ALJ noted that plaintiff "has been able to travel overseas and live in China for extended periods[,]" Tr. 21; that he "reported doing some CrossFit and Pilates" in 2017, Tr. 18; and that "he was able to drive but limited his driving to 20 to 30 minutes." Tr. 17. These are all reasonable and appropriate factors for the ALJ to consider in assessing consistency with the record. See, e.g., Smead v. Comm'r of Soc. Sec., No. 1:13CV00185(JGM)(JMC), 2014 WL 2967601, at *7 (D. Vt. July 1, 2014) ("[T]he ALJ correctly determined that [a treating source's] opinions are inconsistent with [plaintiff's] daily activities including air travel within and outside the United States[.]").

Accordingly, the ALJ properly considered the required factors when evaluating the persuasiveness of Dr. Fischer's opinion, and substantial evidence supports the ALJ's evaluation. The Court finds no error in the evaluation of Dr. Fischer's opinion.

3.   *Opinion of MPT Hrabosky*

The ALJ also considered the December 11, 2019, opinion of plaintiff's treating physical therapist, MPT Hrabosky, which "notes very limited abilities to do anything with significant off task behavior[.]" Tr. 21. Specifically, MPT Hrabosky opined that plaintiff: (1) could sit "less than 2 hours" "total in an 8-hour working day[,]" Tr. 1646; (2) required a ten-minute break every fifteen minutes, see id.; and (3)could "[n]ever" lift ten pounds. Tr. 1647.

The ALJ found MPT Hrabosky's opinion to be "minimally persuasive[.]" Tr. 21. In making that finding, the ALJ stated:

> The undersigned finds the report to be minimally persuasive, as it is based on only a couple of weeks of treatment in physical therapy. Ms. Hradbosky notes that the claimant was currently ambulating with bilateral crutches and notes very limited abilities to do anything with significant off task behavior; however, the assessed limitations are inconsistent with the treatment notes showing some limitations with strength primarily in his left lower extremity (Exhibit 40F) and gaps in treatment from November 2017 to September 2019. While he began treating for gait abnormalities in November 2019 with Ms. Hradbosky, there is no indication that his condition will not improve with physical therapy. In fact, at his physical therapy session on December 20, 2019, the claimant's gait pattern looked better with improved heel strike, increased hip extension and improved push off (Exhibit 40F/42). The claimant did report fatiguing easily with exercises (Exhibit 40F/42); however, he has been able to travel overseas and live in China for extended periods beginning in 2018. Overall, the claimant's independent activities support a greater level of functioning than what was assessed by his physical therapist.

Id. (sic).

Plaintiff makes much of the ALJ's observation that MPT Hrabosky treated plaintiff only briefly: "The ALJ also completely discounts the treatment of Jeanine Hrabosky MPT, because it lasted only a 'couple of weeks.' In fact, Hrabosky saw Plaintiff for seven weeks, two to three times per week." Doc. #20-2 at 17-18. However, as the ALJ expressly stated, MPT Hrabosky's "opinion statement [was] dated December 11, 2019," and she began "seeing the claimant on November 9, 2019[.]" Tr. 21; see also Tr. 1645, Tr. 1648. Accordingly, the ALJ's consideration of the "length of [MPT Hrabosky's] treatment relationship" with plaintiff was proper. Gilmore v. Comm'r of Soc. Sec., No. 20CV03410(KAM), 2022 WL 74167, at *3 (E.D.N.Y. Jan. 7, 2022).[8]

Plaintiff erroneously contends that the ALJ "ignored every single one of Hrabosky's findings in 40 pages of treatment notes[,]" and "ignored Hrabosky's MS Medical Source Statement[.]" Doc. #20-2 at 19. The ALJ did not ignore Hrabosky's findings; rather, she considered and rejected them. The ALJ in fact cited to Hrabosky's treatment notes six times in her ruling. See Tr. 19-21. The ALJ reviewed MPT Hrabosky's

_____

[8] Indeed, the record indicates that MPT Hrabosky had only seven treatment sessions with plaintiff before writing her opinion. See Tr. 1654-55 (Nov. 9, 2019); Tr. 1656-57 (Nov. 18, 2019); Tr. 1658-59 (Nov. 21, 2019); Tr. 1660-61 (Nov. 26, 2019); Tr. 1680-81 (Dec. 3, 2019); Tr. 1682-83 (Dec. 5, 2019); Tr. 1684-85 (Dec. 11, 2019).

Medical Source Statement, and appropriately discounted it based on its inconsistency with the record as a whole. See Tr. 21.

Plaintiff asserts that the ALJ erred by failing to mention each specific restriction recommended by Hrabosky. See Doc. #20-2 at 19. "[A]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citation and quotation marks omitted). "When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, [the Court] do[es] not require that [s]he have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).

The ALJ's rationale is clear. While the ALJ did not explicitly reference the "many rest breaks" plaintiff notes, she cited the very treatment record plaintiff relies upon: "The claimant did report fatiguing easily with exercises (Exhibit 40F/42); however, he has been able to travel overseas and live in China for extended periods beginning in 2018." Tr. 21 (citing Tr. 1690). It is clear that the ALJ properly considered plaintiff's reports of fatigue. See Smead, 2014 WL 2967601, at

*7 ("[T]he ALJ correctly determined that [a treating source's] opinions are inconsistent with [plaintiff's] daily activities including air travel within and outside the United States[.]").

As to supportability, the ALJ explained that "the assessed limitations are inconsistent with [MPT Hrabosky's] treatment notes showing some limitations with strength primarily in [plaintiff's] left lower extremity (Exhibit 40F) and gaps in treatment from November 2017 to September 2019." Tr. 21 (citing Tr. 1649-91); see also Wright v. Colvin, No. 3:16CV00463(JCH), 2017 WL 202171, at *5 (D. Conn. Jan. 18, 2017) ("The ALJ's decision to give no weight to [a treating physician's] opinions due to their inconsistency with her own notes is supported by substantial evidence.").

The ALJ also considered the consistency of MPT Hrabosky's opinion with the record as a whole. In doing so, the ALJ noted that plaintiff "has been able to travel overseas and live in China for extended periods[,]" that his gait pattern was improving with physical therapy, and that his "independent activities support a greater level of functioning than what was assessed by his physical therapist." Tr. 21; see also Smead, 2014 WL 2967601, at *7. Elsewhere in her ruling the ALJ noted that plaintiff was able to drive short distances, see Tr. 17; was "independent with activities of daily living[,]" Tr. 19; and

had "musculoskeletal examinations routinely show[ing] normal gait, muscle tone and strength[.]" Tr. 19.

The ALJ's decision reflects that she properly "evaluated the persuasiveness of the medical source opinion[] and explained how [s]he considered the factors of supportability and consistency." Gilmore, 2022 WL 74167, at *4. The ALJ's evaluation of that opinion is supported by substantial evidence. Accordingly, the Court finds no error in the ALJ's evaluation of MPT Hrabosky's opinion.

### 4. *The Opinions of the Reconsideration-Level State Agency Medical Consultant*

When evaluating the medical opinion evidence, the ALJ also "considered the State agency residual functional capacity assessments at the initial and reconsideration levels[.]" Tr. 20. Because plaintiff challenges only the reconsideration-level state agency medical consultant's opinions, the Court limits its discussion to those opinions. See Doc. #20-2 at 7.

The reconsideration-level state agency medical consultant, Dr. Chopra, found that plaintiff:

> maintains the physical residual capacity to lift and/or carry 20lbs. occasionally and 10lbs. frequently. He can stand and/or walk 4 hours in an 8-hour workday. He can sit 6 hours in an 8-hour workday. Climbing ramps/stairs/ladders/ropes/scaffolds, stooping, kneeling, crouching and crawling limited to occasional. Balancing limited to frequent. Additionally, the claimant should avoid concentrated exposure to extreme heat.

Tr. 111, Tr. 133; see also Tr. 112-15; Tr. 134-37.

The ALJ found that Dr. Chopra's "evaluations for light lifting capacity and standing and walking reduced to four hours in an eight-hour workday are most persuasive, as they align with the clinical and objective findings in the record showing largely stable findings[.]" Tr. 20. In making that finding, the ALJ stressed that "the consultants upon reconsideration had the benefit of updated treatment notes." Id. The ALJ found that the additional evidence submitted by plaintiff at the hearing level did "not support greater or worsening conditions than accounted for by the [state agency medical] consultants from the reconsideration level[.]" Id.

Plaintiff asserts that the later submitted evidence undermines Dr. Chopra's evaluations because the evidence submitted at the hearing level "clearly demonstrate[s] a severe decline in overall functioning, chronic fatigue, and chronic pain." Doc. #20-2 at 7. The Court construes this argument as asserting that Dr. Chopra's evaluation was stale, and therefore the ALJ erred by finding it "most persuasive[.]" Tr. 20.

"[M]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Kelly W. v. Kijakazi, No. 3:20CV00948(JCH), 2021 WL 4237190, at *13 (D. Conn. Sept. 17, 2021) (citation and quotation marks omitted). "However, a

medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." Velazquez v. Berryhill, No. 3:18CV01385(SALM), 2019 WL 1915627, at *7 (D. Conn. Apr. 30, 2019) (citation and quotation marks omitted). Thus, "for a medical opinion to become stale, and an ALJ to err by relying upon it, the subsequent medical evidence must raise doubts as to the reliability of the opinion." Warrick v. Saul, No. 3:19CV00674(SALM), 2020 WL 2537459, at *10 (D. Conn. May 19, 2020) (citation and quotation marks omitted).

Here, the medical evidence submitted at the hearing level that was not available to Dr. Chopra does not "raise doubts as to the reliability of" his opinion. Id. Plaintiff asserts that the following exhibits in the record "clearly demonstrate a severe decline in overall functioning, chronic fatigue, and chronic pain." Doc. #20-2 at 7. Plaintiff cites:

- Tr. 1570-74: Dr. Fischer's MSS;

- Tr. 1575-82: Dr. Fischer's Report of June 13, 2018, consultation;

- Tr. 1644-48: MPT Hrabosky's MSS;

- Tr. 1649-91: Physical Therapy records, including MPT Hrabosky's treatment notes; and

- Tr. 1692-1702: Treatment notes by Dr. Andrea Douglas.

Dr. Chopra had the report of Dr. Fischer's June 13, 2018, consultation before him, and considered it in his evaluation. See Tr. 110-11. He also expressly considered the results of the MRIs ordered by Dr. Fischer. See Tr. 111. The record further reflects that both of Dr. Fischer's opinions were before Dr. Chopra at reconsideration. See Tr. 99-100 (listing "multiple sclerosis medical source statement" and "lumbar spine medical source statement" as being received November 15, 2018, from plaintiff's attorney).

As discussed earlier, the treatment notes from plaintiff's physical therapy do not support significant functional restrictions. The ALJ separately considered those notes, and MPT Hrabosky's opinion, and committed no error in doing so.

Dr. Chopra did not have the benefit of the treatment notes from plaintiff's visit to Dr. Andrea Douglas in December 2019. See Tr. 1694-1702. Those treatment notes lack any functional assessment of plaintiff's limitations; rather, the notes primarily summarize plaintiff's medical history and his self-reported symptoms. See Tr. 1697. Dr. Douglas had not treated plaintiff prior to that appointment. She concluded that plaintiff "needs to see a neurologist locally and establish whether not he should begin treatment for his multiple sclerosis." Tr. 1697 (sic). Such a limited evaluation -- devoid

of any assessment of plaintiff's limitations, and based on plaintiff's self-reporting -- is insufficient to bring the reliability of the reconsideration-level state agency medical consultant's opinions into doubt. See Velazquez, 2019 WL 1915627, at *7.

The only substantive issue that arises in the later records that might have substantially impacted Dr. Chopra's opinion relates to plaintiff's ability (or inability) to ambulate without an assistive device. Dr. Chopra did not have the benefit of the comment in MPT Hrabosky's treatment notes that plaintiff appeared "very unsteady without the crutches." Tr. 1654. He also did not have Dr. Douglas's notes, indicating that plaintiff had reported "now requiring a wheelchair for long distances and crutches for short distances." Tr. 1697. However, Dr. Chopra had ample information regarding plaintiff's trouble ambulating. He considered plaintiff's claim of "hard time walking and pain/spasms in the left leg." Tr. 108. He further considered plaintiff's statement that "he needs a cane 80% of the time[,]" and reported symptoms of pain, weakness, and fatigue. Tr. 112. Moreover, MPT Hrabosky's treatment notes indicated that plaintiff "feel[s] [his] walking is improving." Tr. 1682; see also Tr. 1654, Tr. 1684, Tr. 1686, Tr. 1688.

In sum, the Court finds that the hearing level evidence did not undermine the persuasiveness of the reconsideration-level

state agency medical consultant's opinions. Accordingly, there
is no error on this point.

B.   The RFC Determination

Plaintiff contends that the ALJ's RFC determination is not
supported by substantial evidence. See Doc. #20-2 at 2.
Defendant generally contends that substantial evidence supports
the RFC determination. See Doc. #25-1 at 11-22.

The ALJ found that plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b)
and 416.967(b) except he can stand and walk four hours
in an eight-hour workday with occasional ability to
climb ramps and stairs but no climbing of ladders, ropes,
or scaffolds and occasional balancing, stooping,
kneeling, crouching and crawling. He must avoid
unprotected heights or hazardous machinery and
concentrated exposures to extreme heat.

Tr. 15.

RFC is what an individual can still do despite his or
her limitations. RFC is an administrative assessment of
the extent to which an individual's medically
determinable impairment(s), including any related
symptoms, such as pain, may cause physical or mental
limitations or restrictions that may affect his or her
capacity to do work-related physical and mental
activities.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2
(S.S.A. July 2, 1996). "The RFC assessment must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts ... and nonmedical
evidence (e.g., daily activities, observations)." Id. at *7;
accord Cobb v. Astrue, 613 F. Supp. 2d 253, 258 (D. Conn. 2009);

Dziamalek v. Saul, No. 3:18CV00287(SRU), 2019 WL 4144718, at *17
(D. Conn. Sept. 3, 2019).

The Court construes plaintiff's motion as contending that
the ALJ's RFC determination was not supported by substantial
evidence because it: (1) "erroneously relie[d] on [a]
measurement of momentary strength as the basis for finding
Plaintiff could endure the four hours of standing and walking
and the frequent lifting and carrying required by 'light
work[,]'" Doc. #20-2 at 5; (2) failed to consider plaintiff's
need for assistive devices, see id. at 5-6, 8; (3) improperly
considered plaintiff's course of treatment, see id. at 6-7; and
(4) was "based on an incomplete, inaccurate and selective review
of the medical evidence." Id. at 7.[9]

     1.   *Strength Determination*

Plaintiff contends that the ALJ "Erroneously Conflated
Strength with Endurance" when finding that "none of the medical
records detail any significant loss of strength such that

---

[9] Plaintiff further asserts that the ALJ's decision was not
supported by substantial evidence and infected by legal error
because the ALJ stated that there "is no indication that the
claimant's condition would not improve with continued treatment
and therapy[.]" Tr. 20; see also Doc. #20-2 at 2. However, it
does not appear that the ALJ factored the possibility of future
improvement into her determination that plaintiff had the RFC to
perform light work with limitations during the disability
period. Accordingly, this observation by the ALJ does not
constitute error.

[plaintiff] could not lift and carry to the extent" necessary to perform light work with added postural limitations. Id. at 4 (citation and quotation marks omitted); see also Tr. 19.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [plaintiff] must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(b), §416.967(b).

Plaintiff attacks the ALJ's observation that "the record shows reduced strength of 4/5 only in the lower left extremity." Doc. #20-2 at 4; see also Tr. 19. Plaintiff argues: "The finding of a 4/5 reduction of strength in Plaintiff's left leg was a measurement of strength that would be relevant to his ability to lift and carry, and stand/wallk, at any one moment. It is not relevant to performing functions during an 8-hour work day." Doc. #20-2 at 5 (sic). But this was not the only factor relied upon by the ALJ in assessing the RFC. "The ALJ considered the entire record, as a whole, in determining" that plaintiff had the requisite strength to perform light work with additional postural limitations. Seekins v. Astrue, No. 3:11CV00264(VLB)(TPS), 2012 WL 4471266, at *8 (D. Conn. Aug. 14,

2012), report and recommendation adopted, 2012 WL 4471264 (Sept. 27, 2012).

For example, the ALJ relied on the reconsideration-level state agency medical consultant's findings that plaintiff had "light lifting capacity and standing and walking reduced to four hours in an eight-hour work day[.]" Tr. 20; see also Tr. 113, 135. Such findings are consistent with the ALJ's consideration of the record, which showed that plaintiff had limitations with strength primarily in his lower left extremity, see Tr. 1694, but also that he rejected recommended treatment methods, see Tr. 1576, and traveled internationally for extended periods beginning in 2018. See Tr. 1542, Tr. 1595; see also Villalobo v. Saul, No. 19CV11560(CS)(JCM), 2021 WL 830034, at *13 (S.D.N.Y. Feb. 9, 2021) ("It is entirely appropriate for the ALJ to consider activities of daily living in the RFC when they offer insight on how the claimant's impairments affect her ability to work and undertake activities of daily life." (citations and quotation marks omitted)).

Taken together, these findings do not simply measure plaintiff's "momentary strength[.]" Doc. #20-2 at 5. Instead, they reveal that the ALJ comprehensively reviewed the record "as a whole[]" when determining that plaintiff had the requisite strength to perform light work with additional restrictions. Seekins, 2012 WL 4471266, at *8. In light of that comprehensive

review, the ALJ's finding that plaintiff was able to "lift and
or carry to the extent of the [RFC][,]" Tr. 19, was supported by
substantial evidence. Therefore, the ALJ did not err when
determining that plaintiff had sufficient strength to complete
light work with additional restrictions.

       2.   *Use of an Assistive Device*

The Court construes plaintiff's brief as asserting that the
ALJ erred by failing to consider plaintiff's use of an assistive
device when formulating the RFC. See Doc. #20-2 at 5-6, 8.
Specifically, plaintiff asserts that the ALJ (1) erroneously
concluded that plaintiff did not use an assistive device before
2019, and (2) failed to account for plaintiff's post-2019 use of
crutches in the RFC. See id. at 5, 8. Defendant responds that
"The ALJ Correctly found that Plaintiff Did Not Use Ambulatory
Assistive Devices Before Late 2019[,]" Doc. #25-1 at 7, and "the
ALJ was not required to include the use of an ambulatory
assistive device in the RFC." Id. at 11.

The ALJ stated: "There are no reports for using assistive
devices until late 2019 (Exhibit 41F)." Tr. 19. Plaintiff
asserts that this "is simply erroneous[,]" and cites to various
treatment records reflecting his self-reported use of an
assistive device prior to 2019. Doc. #20-2 at 5; see also id. at
5-6 (citing Tr. 867, Tr. 925, Tr. 929, Tr. 958, Tr. 1102, Tr.
1106, Tr. 1550). Although the record reflects plaintiff's self-

reported use of an assistive device beginning in 2017, "there must be medical documentation establishing the need for a hand-held assistive device[.]" SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996); accord Lamont v. Comm'r of Soc. Sec., No. 20CV04581(BMC), 2021 WL 5084060, at *1 (E.D.N.Y. Nov. 2, 2021) ("[T]he medical necessity of using a cane or any other assistive ambulatory device, to be part of a plaintiff's limitations ... , must be reflected in medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" (citation and quotation marks omitted)); see also Harry B. v. Comm'r of Soc. Sec., No. 3:20CV00227(ATB), 2021 WL 1198283, at *9 (N.D.N.Y. Mar. 30, 2021) ("The fact that at times, plaintiff may have used a cane or assistive device, does not indicate that such a device was medically necessary. An observation that plaintiff used such a device, even by medical personnel is not enough."). Plaintiff fails to present any "medical documentation establishing the need for a hand-held assistive device" prior to late 2019. Lamont, 2021 WL 5084060, at *1. Indeed, Dr. Fischer's 2018 medical source statements affirmatively state that plaintiff did not require the use of a cane or other assistive device while engaging in occasional standing and walking. See Tr. 1568, Tr. 1573. Accordingly, there is no reversible error on this point.

Plaintiff contends that the RFC determination is not supported by substantial evidence because it "does not mention the need for use of a cane or other assistive device[,]" and specifically, fails to account for plaintiff's use of crutches in 2019. Doc. #20-2 at 8. For reasons previously stated, the ALJ did not err by failing to account for an assistive device before late 2019. However, by December 2019, MPT Hrabosky did opine that plaintiff required the use of "a cane or other assistive device[]" "[w]hile engaging in occasional standing/walking[.]" Tr. 1647. The ALJ did not discuss this finding in the context of the RFC determination. However, the ALJ did explicitly consider plaintiff's use of an assistive device in connection with her step four findings:

> The undersigned notes that the vocational expert further testified that the work as a hotel sales representative could still be performed with the use of a cane and/or elbow crutches[.] ... The undersigned stops short of adding these further limitations to the determined residual functional capacity (RFC) as the record fails to support that the claimant had these further level of ongoing limitations during the period at issue.

Tr. 22 (sic). Here, incorporating plaintiff's use of an assistive device into the RFC determination would not have impacted the ALJ's ultimate disability determination because the vocational expert testified that plaintiff's work as a hotel sales representative could still be performed with the use of an assistive device. See Tr. 22. Accordingly, any error on this

point is harmless. <u>See</u>, <u>e.g.</u>, <u>Zabala v. Astrue</u>, 595 F.3d 402,
410 (2d Cir. 2010) (where there is "no reasonable likelihood
that [the ALJ's] consideration of the ... doctor's 2002 report
would have changed the ALJ's determination ... remand for
consideration of the improperly excluded report is
unnecessary[]"); <u>Johnson v. Comm'r of Soc. Sec.</u>, No.
18CV00507(MJR), 2019 WL 3406610, at *5 (W.D.N.Y. July 29, 2019)
(remand was not warranted for failure to include environmental
limitations in the RFC where "plaintiff's past relevant work as
a receptionist, which the ALJ determined that plaintiff could
perform, does not require exposure to environmental irritants,
such as fumes, odors, dusts, gases, and extreme heat or
cold[]"); <u>Kenyon v. Comm'r of Soc. Sec.</u>, No. 5:16CV00260(WBC),
2017 WL 2345692, at *5 (N.D.N.Y. May 30, 2017) ("Here, any error
to include environmental limitations in the RFC determination
would be harmless error because the positions identified by the
vocational expert do not require exposure to atmospheric
conditions such as dusts, fumes, and gases.").

     3.   *Consideration of MS Treatment*

Plaintiff contends that the ALJ erred by finding "that
Plaintiff did not accept treatment for his MS," an "impression"
that "is not[] ... supported by the record." Doc. #20-2 at 6.
Plaintiff's argument misconstrues the ALJ's decision.

The ALJ properly "consider[ed] all of the evidence of record" in reaching her determination. Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010). First, the ALJ acknowledged in her decision that, in 2014, Dr. Fischer's treatment notes stated: "[Plaintiff] has consistently refused any intervention with respect to his multiple sclerosis with immunomodulating agents. He has been extensively counseled in that regard. He has utilized meloxicam and tizanidine for his disc issues." Tr. 422; see also Tr. 18. Furthermore, the ALJ noted that in 2017, "[t]he claimant was reportedly taking naturopathic treatments and did not want to pursue traditional medicine[.]" Tr. 19 (citing Tr. 1303). The ALJ then noted that in 2019, plaintiff's "conditions were noted to be controlled with medication management with only conservative and naturopathic treatment." Tr. 20. This is an accurate summary of the record.

Plaintiff asserts that "the ALJ maintains that she can discount all of the evidence of impairment because plaintiff did not follow all the recommended treatment, and, discounting all the evidence of impairment, plaintiff cannot be found to be disabled." Doc. #26 at 10. However, the ALJ did not "discount all of the evidence of impairment[.]" Id. Rather, the ALJ permissibly considered both plaintiff's conservative treatment and failure to comply with treatment recommendations in reaching her decision. See, e.g., Dolan v. Berryhill, No.

17CV04202(GBD)(HBP), 2018 WL 4658804, at *17 (S.D.N.Y. July 24, 2018) ("A claimant's conservative treatment regimen is a relevant factor that an ALJ may consider in making [her] RFC determination."), report and recommendation adopted, 2018 WL 3991496 (Aug. 21, 2018); Bessette v. Colvin, No. 2:14CV00164, 2015 WL 8481850, at *6 (D. Vt. Dec. 9, 2015) ("The Social Security regulations state: If you do not follow the prescribed treatment without a good reason, we will not find you disabled. And the Social Security Administration has determined that a claimant's statements may be less credible if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." (citations and quotation marks omitted)); SSR 82-59, 1982 WL 31384, at *2 (S.S.A. 1982) ("[C]ontinued failure to follow prescribed treatment without good reason can result in denial or termination of benefits.").

Accordingly, the ALJ properly considered plaintiff's MS treatment, and there is no reversible error.

### 4. *Consideration of Medical Records*

Plaintiff contends that the ALJ's "finding that Plaintiff has a light RFC is based on an incomplete, inaccurate and selective review of the medical evidence." Doc. #20-2 at 7. Defendant contends: "[T]he ALJ provided a complete and accurate review of the evidence[.] ... Rather, it is Plaintiff, who in

37

his argument, cherry picks the record with a heavy reliance on his medically uncorroborated subjective complaints." Doc. #25-1 at 22 (citations omitted).

"[A]n ALJ is tasked with weighing all the evidence, including medical opinion evidence, in the record. Similarly, the ALJ may not cherry pick evidence. Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." Carisma A. o/b/o T.A. v. Comm'r of Soc. Sec., 516 F. Supp. 3d 301, 306 (W.D.N.Y. 2021) (citations and quotation marks omitted). However, "an ALJ is not required to address every aspect of the record in [her] opinion or comb the record to reconcile every conflicting shred of medical testimony." Daniels v. Berryhill, 270 F. Supp. 3d 764, 775 (S.D.N.Y. 2017) (citation and quotation marks omitted).

Plaintiff asserts that the ALJ: (1) failed to account for treatment notes indicating that plaintiff's ability to exercise was more limited than other treatment notes suggested, see Doc. #20-2 at 10-12; (2) "[chose] not to discuss significant symptoms that persisted and were not resolved by [plaintiff's May 2017] back surgery and that would ultimately be attributed to MS[,]" id. at 9; and (3) "[did] not consider whether Plaintiff was in a remitting or relapsing state of his MS progression." Id.

Essentially, plaintiff's arguments amount to either a demand that the ALJ "discuss all the evidence submitted," Barringer, 358 F. Supp. 2d at 79, or that the Court engage in an impermissible reweighing of the evidence in plaintiff's favor, see Cohen v. Comm'r of Soc. Sec., 643 F. App'x 51, 52 (2d Cir. 2016). Here, the ALJ engaged in an extensive review of the record, and there is no basis to conclude that she cherry picked the evidence to support her RFC determination. Accordingly, the ALJ did not err in her consideration of evidence.

## VI.   CONCLUSION

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #20]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **GRANTED**.

SO ORDERED at New Haven, Connecticut, this 23rd day of March, 2022.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE